Filed 3/14/25; Certified for Publication 4/10/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NAPA VALLEY UNIFIED SCHOOL DISTRICT,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>STATE BOARD OF EDUCATION,<br><br>  Defendant and Respondent;<br><br>NAPA FOUNDATION FOR OPTIONS IN EDUCATION,<br><br>  Real Party in Interest and Appellant; and<br><br>NAPA COUNTY OFFICE OF EDUCATION,<br><br>  Real Party in Interest. | C099068<br><br>(Super. Ct. No. 34-2022-80004051-CU-WM-GDS) |

1

CALIFORNIA SCHOOL BOARDS ASSOCIATIONS EDUCATIONAL LEGAL ALLIANCE,

    Plaintiff and Respondent,

v.

STATE BOARD OF EDUCATION,

    Defendant and Respondent;

NAPA FOUNDATION FOR OPTIONS IN EDUCATION,

    Real Party in Interest and Appellant.

C099069

(Super. Ct. No. 34-2023-80004069-CU-WM-GDS)

---

In 2021, real party in interest Napa Foundation for Options in Education (Napa Foundation) filed a petition (the petition) with plaintiff Napa Valley Unified School District (the School District) seeking to establish the Mayacamas Charter Middle School (Mayacamas Charter School). The Napa Valley Unified School District Board of Education (District Board) denied the petition. The Napa Foundation submitted the same petition to the Napa County Board of Education (County Board), and the County Board also denied the petition. The Napa Foundation appealed these denials to the defendant State Board of Education (State Board), which reversed the determinations of the District Board and County Board.

The School District and plaintiff California School Boards Association's Educational Legal Alliance (the Educational Legal Alliance) separately filed petitions for writs of mandate and complaints, seeking to have the State Board's determination set aside. Deciding the cases together, the trial court granted the writ petitions and issued a peremptory writ of mandate, commanding the State Board to set aside its decision.

2

In these consolidated appeals, the Napa Foundation asserts that the trial court abused its discretion in overturning the State Board's decision approving the petition. Specifically, the Napa Foundation argues that the record supported the State Board's determinations that (1) the District Board abused its discretion, and (2) the County Board abused its discretion. The Napa Foundation also argues that (3) the trial court improperly required the State Board to have found that abuses of discretion were committed by *both* the District Board *and* the County Board in order to reverse; according to the Napa Foundation, the version of Education Code section 47605[1] in effect at the time only required the State Board to find an abuse of discretion committed by *either* the District Board *or* the County Board. We granted the request of the California Charter Schools Association to file an amicus curiae brief in support of the Napa Foundation and its interpretation of section 47605.

We conclude that the State Board incorrectly determined that the District Board and County Board abused their discretion. We will affirm the judgments.

BACKGROUND

*Charter Schools Generally and Petitioning to Establish a Charter School*

Charter schools are a relatively recent addition to California's educational landscape. With the enactment of the Charter Schools Act of 1992 (§ 47600 et seq., added by Stats. 1992, ch. 781, § 1), "California became one of the first states in the country to authorize charter schools." (*Anderson Union High School Dist. v. Shasta Secondary Home School* (2016) 4 Cal.App.5th 262, 268, fn. omitted.) "Charter schools are 'public schools funded with public money but run by private individuals or entities rather than traditional public school districts.' " (*Id*. at pp. 267-268, quoting *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 205

---

[1]     Undesignated statutory section references are to the Education Code.

(*Today's Fresh Start*).) "The Legislature intended its authorization of charter schools to improve public education by promoting innovation, choice, accountability, and competition." (*Today's Fresh Start, supra*, at pp. 205-206.)

Typically, the process for establishing a new charter school involves the submission of a complying petition for the establishment of a charter school, including the proposed charter, to the school district in which the proposed school is to be located. (§ 47605, subd. (a).) "In reviewing petitions for the establishment of charter schools . . . , the chartering authority shall be guided by the intent of the Legislature that charter schools are and should become an integral part of the California educational system and that the establishment of charter schools should be encouraged. The governing board of the school district shall grant a charter for the operation of a school . . . if it is satisfied that granting the charter is consistent with sound educational practice and with the interests of the community in which the school is proposing to locate." (*Id*., subd. (c).) "The governing board of the school district shall not deny a petition for the establishment of a charter school unless it makes written factual findings, specific to the particular petition, setting forth specific facts to support one or more" of the statutory findings set forth in section 47605, subdivision (c)(1) through (8) justifying denial. (*Id*., subd. (c).)

"If the governing board of a school district denies a petition, the petitioner may elect to submit the petition for the establishment of a charter school to the county board of education." (§ 47605, subd. (k)(1)(A)(i).) "If the county board of education denies a petition, the petitioner may appeal that denial to the state board." (*Id*., subd. (k)(2).) If the state board elects to hear the appeal rather than summarily deny it based on the documentary record (see *id*., subd. (k)(2)(D), (E)), "the state board may affirm the determination of the governing board of the school district or the county board of education, or both of those determinations, *or may reverse only upon a determination that there was an abuse of discretion by each of the governing board of the school district and the county board of education*." (*Id*., subd. (k)(2)(E), italics added.) As distinguished

4

from the language italicized above, at the relevant time here, this subdivision provided that the State Board "*may reverse only upon a determination that there was an abuse of discretion.*" (*Id.*, former subd. (k)(2)(E), italics added.)

*The Petition*

In September 2021, the Napa Foundation submitted the petition seeking to establish the Mayacamas Charter School to serve the Napa Valley community. By way of background, the petition stated that "River Middle School was established as a dependent charter school authorized by [the School District] that operated as a charter school for more than two decades until 2019, when it relinquished its charter and became a District school. In April 2021, the [District Board] voted to close River [Middle School] effective at the end of the 2021-22 school year, and to use the facility for a new dual-language immersion middle school program. [¶] Parents, teachers, community leaders and other stakeholders have responded to the closure of River [Middle School]. . . by seeking to establish an independent charter within [the School District] inspired by some of the original founding principles of River [Middle School], yet expanding on these principles and developing a unique, highly personalized education program with an emphasis on engaging, project-based learning and social-emotional learning."

*The District Board's Denial of the Petition*

To aid in its determination, the District Board designated a staff team to conduct a comprehensive review of the petition and issue findings. The resulting staff report indicated that, during the public comment period, there were 23 comments opposed to the charter and 17 in support. Additionally, although staff found that the petition met the required number of signatures for both teachers and parents under section 47605, subdivision (a)(1), it noted that only 76 percent of parent signatories remained meaningfully interested in enrolling their children at the Mayacamas Charter School.

The staff report also noted that they attempted to conduct a "capacity interview" with the individuals from the Napa Foundation to explore issues about the program, the

budget, their knowledge of the petition, and plans for its implementation. However, members of the Napa Foundation attempted to impose conditions on the interview. After the staff declined the conditions, the Napa Foundation refused to participate in a capacity interview.

The staff report noted that, during its review of files containing the proposed budget, staff discovered a link to an unsuccessful petition to establish a charter school in a different school district. That petition bore substantial similarities to the petition here, including portions copied from one document to the other.

Ultimately, the staff report recommended that the District Board deny the petition. The staff report identified reasons for its recommendation:

"The financial and operational plan for the Charter School is not viable, is based on unsupported and unrealistic revenue and expense assumptions, and will result in the Charter School not meeting the minimum financial reserve specified under the applicable state regulations in all years of operation.

"The Petition describes admissions criteria that violate state law and may have discriminatory effects, by conditioning an admissions preference on parent volunteer hours. The inclusion of this unlawful admissions preference demonstrates an unfamiliarity with the laws governing charter schools on the part of Petitioners.

"Petitioners lack the knowledge and experience to successfully implement the program set forth in the Petition, and have not articulated a clear plan to obtain the services of individuals who have the required knowledge and experience.

"The educational program set forth in the Petition is not reasonably comprehensively described; is unlikely to meet the needs of all subgroups of pupils (particularly English learners and students with disabilities); and is unlikely to be successfully implemented.

"The Charter School is unlikely to serve the interests of the entire community in which it proposes to locate, because it duplicates programs that the District already offers

6

with sufficient capacity and because it would undermine existing District services, academic offerings, or programmatic offerings due to its fiscal impact.

"Additionally, community interest in the Charter School does not appear strong, based on (1) public comments at the . . . public hearing on the Petition, and (2) an apparent 24% decrease in interest in the Charter School by parents who signed the Petition, as evidenced by responses to . . . parent signature validation calls.

"The Petition appears to have large portions simply cut-and-pasted from another charter petition that was submitted last year to [another school district], rather than having been prepared specifically with the needs of [the School District] students and the [the School District] community in mind."

The staff report relied on the following statutory grounds for its denial recommendation: (1) the petition presented an "unsound educational program" (§ 47605, subd. (c)(1)); (2) the Napa Foundation was "demonstrably unlikely to successfully implement the program" (*id.*, subd. (c)(2)); (3) the petition did not contain reasonably comprehensive descriptions of the educational program, measurable student outcomes, and means by which the Mayacamas Charter School would "achieve a balance of racial and ethnic pupils, special education pupils, and English learner pupils that is reflective of the general population residing within the District" (*id.*, subds. (c)(5)(A), (B), (G)); and (4) the Mayacamas Charter School was "demonstrably unlikely to serve the interests of the entire community in which the school is proposing to locate" (*id.*, subd. (c)(7)).

After a public hearing, the District Board unanimously adopted the proposed findings in the staff report and denied the petition.

*The County Board's Denial of the Petition*

On December 21, 2021, the Napa Foundation submitted the petition to the County Board. Staff of real party in interest Napa County Office of Education, together with the Napa County Superintendent of Schools, reviewed the petition and issued findings to aid the County Board in its determination. These findings indicated that the Mayacamas

7

Charter School would provide students with educational benefits similar to the River Middle School, that the Napa Foundation appeared capable of implementing the program laid out in the petition, and that the Napa Foundation had satisfied all legal requirements for the establishment of a charter school.

The staff findings further noted, however, that the County Board should consider whether the School District's financial challenges demanded the denial of the petition on the grounds that it would not serve the interests of the entire community in which the school was to be located. The findings acknowledged that the School District was "in a precarious financial position due to declining enrollment," and concluded that the Mayacamas Charter School "likely would exacerbate existing financial challenges and accelerate [the School District's] move to qualified and/or negative certification by at least a year." (See § 42131, subd. (a)(1) [discussing negative, qualified, and positive certifications].) After reviewing aspects of the petition and the history of River Middle School, the findings stated, "[w]ere the Superintendent looking at the Petition in a vacuum, she would enthusiastically recommend approval. However, the [Napa County Office of Education] is obliged by law to safeguard the fiscal health of school districts within Napa County. [The Napa County Office of Education] thus is required to review [the School District's] financial condition and intervene if and when [it] is in fiscal distress. It is out of this obligation that [Napa County Office of Education] expresses reservations about granting the Petition."

The staff findings emphasized the declining enrollment in the School District, and that it had been in deficit spending since 2014. The School District had been forced to cut expenses and increase revenues in food services, transportation, small schools, facilities use fees, charter schools, extended days, class size, and district office staffing. The staff findings stated, "without making additional cuts to staffing or programming, [the School District] will not hold its required reserve in the 2026-2027 school year. [Citation.] With the addition of [the Mayacamas Charter School], [the School District]

8

will not hold its required reserve in the 2025-2026 school year." The findings projected that the School District would have to make "significant cuts to staffing and programming over the next couple of years," including the closure of schools, "if it is going to stay financially solvent." The findings pointed out two "criteria that could change assumptions about [the School District's] future budget." On one hand, if the Mayacamas Charter School was not approved, a number of parents indicated that they would enroll their children in private schools, eliminating units of average daily attendance from the School District. On the other hand, due to the expansion of transitional kindergarten, the School District was projected to add approximately 460 units of average daily attendance by the 2025-2026 school year.

The staff findings focused on the criterion for denial found in section 47605, subdivision (c) stating: "The charter school is demonstrably unlikely to serve the interests of the entire community in which the school is proposing to locate. Analysis of this finding shall include consideration of the fiscal impact of the proposed charter school. A written factual finding under this paragraph shall detail specific facts and circumstances that analyze and consider the following factors: [¶] (A) The extent to which the proposed charter school would substantially undermine existing services, academic offerings, or programmatic offerings. [¶] (B) Whether the proposed charter school would duplicate a program currently offered within the school district and the existing program has sufficient capacity for the pupils proposed to be served within reasonable proximity to where the charter school intends to locate." (§ 47605, subd. (c)(7).) The findings concluded: "the Petition should be granted **unless** the Board finds that denial based on" the criterion set forth in section 47605, subdivision (c)(7) "is justified. The Board should review whether or not the projected change in [average daily attendance] and associated change in revenue, net of expenditure reductions, would change [the School District's] budget certification based on the data in the Petition and what is known at this time."

9

On March 15, 2022, following a public hearing, the County Board denied the petition. The County Board designated two of its members to work with legal counsel to prepare written findings. The County Board discussed the grounds for denial that should appear in the written findings, including the fiscal impact of the Mayacamas Charter School and whether its establishment would substantially undermine other programs.

On April 5, 2022, the County Board ratified the resulting written findings. The written findings stated that the Mayacamas Charter School was unlikely to serve the interests of the entire community in which it was proposing to locate (§ 47605, subd. (c)(7)), that the Mayacamas Charter School "would substantially undermine existing services, academic offerings, or programmatic offerings" (*id*., subd. (c)(7)(A)), but that the Mayacamas Charter School would not "duplicate a program currently offered within the school district [where] the existing program ha[d] sufficient capacity for the pupils proposed to be served within reasonable proximity to where the charter school intends to locate" (*id*., subd. (c)(7)(B)). We will set forth in detail *post* the County Board's written factual findings as adopted.

*Appeal to the State Board*

The Napa Foundation appealed to the State Board. The Napa Foundation asserted that the District Board did not provide a fair and impartial petitioning process, and that the factual findings adopted by the District Board were not supported by substantial evidence.

The Napa Foundation claimed that the County Board failed to proceed in the manner required by law when it failed to either grant the petition or timely adopt written factual findings, the County Board's denial was not supported by the factual findings it ratified on April 5, 2022, and the County Board's factual findings were not supported by evidence in the documentary record.

To aid the State Board in its review, the State Department of Education issued findings, recommending that the State Board affirm the decisions of the District Board

10

and County Board denying the petition. It concluded the Napa Foundation had not met its burden of detailing, with specific citations to the documentary record, how the District Board or County Board abused their discretion. Addressing the Napa Foundation's claims that the District Board failed to provide a fair and impartial petitioning process, the State Department of Education concluded that the Napa Foundation's record citations did not demonstrate the proceedings were unfair. As for the Napa Foundation's claim that the County Board's adoption of written findings was not timely, the State Department of Education stated that the record established the Napa Foundation's petition was not submitted in full statutory compliance until January 5, 2022, and therefore the 90-day window pursuant to section 47605, subdivision (b) had not yet expired when the County Board adopted its written findings on April 5, 2022.

Going against the State Department of Education's recommendations, by a six-to-five vote, the State Board reversed the determinations of the District Board and the County Board and designated the Napa County Office of Education as the oversight agency for the charter. The substance of the State Board's decision read: "At the county level, the county did not satisfy the requirements of . . . Section 47605[, subdivision] [(c)](7) and did not provide evidence in the documentary record that the proposed charter would substantially undermine existing services, offerings, or programs. Additionally, the district abused its discretion by failing to proceed in a manner required by law because it did not provide a fair and impartial hearing process."

### *The Trial Court's Rulings and Judgments*

The District Board and the Educational Legal Alliance separately filed petitions for peremptory writs of mandate and complaints, seeking to have the State Board's determination set aside and seeking injunctive and declaratory relief.

Analyzing the State Board's determination that the District Board did not provide a fair and impartial hearing through the lens of procedural due process, the trial court concluded that the mere fact that District Board members read prepared remarks at the

11

public hearing did not establish that they based their determination on anything other than the evidence presented in the official review process, and that the statements did not rise to the level of actual bias. Other remarks, referring to "fraudulent" financial figures and the claim that the petition had been "copied and pasted" from another petition, represented a particular District Board member's opinion upon reviewing the evidence, an opinion the board member was entitled to voice. The court also emphasized that the State Board did not provide any evidence that a District Board member made public statements against the petition *prior to the public hearing* or participated in an organized effort opposed to the petition *prior to the hearing*. Absent evidence of actual bias, the State Board was required to presume that the District Board members were impartial, and the State Board cited to no evidence to rebut that presumption. Additionally, the court stated that the fact that the District Board's staff may have been frustrated by the failure of the District Board and the Napa Foundation to reach an agreement concerning the capacity interview did not constitute evidence of actual bias.

Turning to the State Board's review of the County Board's decision, the trial court found that the record was not entirely lacking in evidentiary support for the County Board's determination that the proposed charter school was "demonstrably unlikely to serve the interests of the entire community in which the school is proposing to locate," based on, among other things, the fiscal impact of the proposed school, as the proposed school would "substantially undermine existing services, academic offerings, or programmatic offerings." (§ 47605, subd. (c)(7)(A).) The "District provided ample evidence of pre-existing financial distress. . . . Evidence in the record supports that this increased lack of funding [resulting if the petition were granted] would cause the District to fail to meet its required financial reserves at least a year earlier than it otherwise would, and the District would need to eliminate counselors, intervention teachers, and electives; and/or close small elementary schools located in the City of Napa." The court found that the "fact that the District was already experiencing financial distress and may

12

eventually have to make some of these difficult decisions even without approval of the Charter School, does not negate the evidence that the Charter School will have a negative fiscal impact on the District if approved." (Italics omitted.)

After oral argument, the trial court adopted its tentative ruling, with further elaboration. The trial court granted the writ petitions, concluding that the State Board abused its discretion in reversing the District Board's and the County Board's decisions. The court entered judgment in favor of the District Board and the Educational Legal Alliance and against the State Board, and issued a peremptory writ of mandate, commanding the State Board to set aside its decision.

DISCUSSION

I

*Standard of Review*

The Napa Foundation asserts that the trial court abused its discretion in overturning the State Board's decision approving the petition. According to the Napa Foundation, because there was evidence in the record to support the State Board's decision, the trial court was required to affirm it. Instead, the Napa Foundation argues, the trial court misapplied the abuse of discretion standard by seeking out evidence to undermine the State Board's action rather than looking for evidence in the record supporting the State Board's determination.

The parties disagree on the standard under which we must review the State Board's decision. The Napa Foundation and Amicus Curiae, California Charter School Association, argue that the State Board's determination was made in a quasi-legislative capacity. (See *California School Boards Assn. v. State Bd. of Education* (2015) 240 Cal.App.4th 838, 846 ["the approval of a charter creates a school district and, like the creation of any other district, is a quasi-legislative act"].) Therefore, Code of Civil Procedure section 1085 governing ordinary mandate applied, as the trial court found. The District Board and the Educational Legal Alliance counter that, under the Charter Schools

13

Act as amended by Assembly Bill No. 1505 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 486), the State Board's role reviewing the denial of a petition for an abuse of discretion on appeal amounts to a quasi-judicial act. As such, Code of Civil Procedure section 1094.5 applied.

"Statutes provide for two types of mandate review: ordinary mandate and administrative mandate." (*Martis Camp Community Assn. v. County of Placer* (2020) 53 Cal.App.5th 569, 593 (*Martis Camp Community Assn.*), citing Code Civ. Proc., §§ 1085, 1094.5.) "The nature of the administrative action or decision at issue determines which type of review applies." (*Martis Camp Community Assn., supra*, at p. 593)

"In general, administrative mandate under Code of Civil Procedure section 1094.5 is used to review the validity of quasi-judicial decisions resulting from a proceeding in which (1) a hearing was required to be given, (2) evidence was required to be taken, and (3) discretion in the determination of facts was vested in the agency. [Citation.] In administrative mandate cases, abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by substantial evidence in light of the whole record." (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593, fn. omitted, citing Code Civ. Proc., § 1094.5, subds. (b), (c).)

"Ordinary mandate under Code of Civil Procedure section 1085 is used to review ministerial acts, quasi-legislative acts, and quasi-judicial decisions which do not meet the requirements for review under Code of Civil Procedure section 1094.5. [Citations.] In such cases, the appropriate standard is whether the agency's action was arbitrary, capricious, entirely lacking in evidentiary support, or failed to follow the procedure required by law." (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at pp. 593-594.)

14

There is no published case since the enactment of Assembly Bill No. 1505 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 486), which altered the State Board's role in the process, addressing whether, in considering an appeal from a school district board or a county board, the State Board acts in a quasi-legislative or quasi-judicial fashion. Because we conclude the outcome of these appeals would be the same under either standard of review, we need not resolve this dispute.

Again, in general, "when review is sought by means of ordinary mandate the inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support; when review is sought by means of administrative mandate the inquiry is directed to whether substantial evidence supports the decision." (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 849.) "Although the 'arbitrary or capricious' standard is not synonymous with the 'substantial evidence' test [citation], there are only subtle differences between them." (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 595; accord, *Sacramentans for Fair Planning v. City of Sacramento* (2019) 37 Cal.App.5th 698, 707 [these standards of review are "not materially different"].) "Under the arbitrary and capricious standard, the question is whether the agency's action has a reasonable basis in law and a substantial basis in fact. [Citation.] We defer to an agency's factual finding unless no reasonable person could have reached the same conclusion on the evidence before it. [Citations.] Under the substantial evidence test, our review begins and ends with a determination of whether there is substantial evidence, contradicted or uncontradicted, to support the findings. [Citation.] We do not reweigh the evidence and are bound to indulge all presumptions and resolve all conflicts in favor of the administrative decision. [Citation.] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. [Citation.] A common formulation of the substantial evidence test asks whether a reasonable person could have reached the same conclusion on the evidence."

(*Martis Camp Community Assn.,* at p. 595.)  Under the facts of this appeal, we do not find the subtle differences between the two standards to be material.

Regardless of the standard we apply to the State Board's factual findings, "we review questions of statutory interpretation and other questions of law de novo."  (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 596.)

"On appeal in mandate actions, the trial court and appellate court perform the same function.  [Citations.]  We review the agency's action, not the trial court's decision."  (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593.)

II

*The State Board's Review of the District Board's Decision*

The State Board concluded that "the district abused its discretion by failing to proceed in a manner required by law because it did not provide a fair and impartial hearing process."  The Napa Foundation maintains that the record contained sufficient evidence to demonstrate to the State Board that the District Board's process was unfair, not in accordance with the law, and inconsistent with the presumption favoring charter petitions.  The Napa Foundation and Amicus Curiae, California Charter School Association, assert that the trial court improperly substituted its own judgment for that of the State Board, and the Napa Foundation further argues the trial court ignored evidence supporting the State Board's determination.  We disagree.

In the quasi-judicial context, "[t]o show nonfinancial bias sufficient to violate due process, a party must demonstrate actual bias or circumstances ' "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." ' [Citations.]  The test is an objective one."  (*Today's Fresh Start, supra*, 57 Cal.4th at p. 219.)  " '[D]ue process violations generally are confined to 'the exceptional case presenting extreme facts.' " (*Ibid.*)  Even if this standard is applied here, there is no evidence in this record of actual bias or circumstances evincing an intolerably high risk thereof.

16

However, while the parties dispute whether the State Board acted in a quasi-legislative or quasi-judicial capacity, no one disputes that the District Board acted in a quasi-legislative capacity. (See *California School Boards Assn. v. State Bd. of Education, supra*, 240 Cal.App.4th at p. 846 ["the approval of a charter creates a school district and, like the creation of any other district, is a quasi-legislative act"].) " 'Quasi-legislative acts are not subject to procedural due process requirements . . . .' " (*Save Civita Because Sudberry Won't v. City of San Diego* (2021) 72 Cal.App.5th 957, 983, italics & fn. omitted; see *Wilson v. Hidden Valley Municipal Water Dist.* (1967) 256 Cal.App.2d 271, 286-287 ["Any claim of prejudgment, bias or prejudice . . . is beside the point. Decisions of a governing board of a quasi-legislative character are expected to reflect the majority will of its constituents on matters of quasi-legislative policy. This is the essence of representative government"].) Thus, the standard set forth *ante* does not apply here.

The Napa Foundation's unfairness argument focuses on the contention that the District Board's "process was not in accord with principles of fairness towards the petitioners consistent with the presumption" in section 47605 in favor of granting charter petitions. Section 47605 provides that, in considering a petition, "the chartering authority shall be guided by the intent of the Legislature that charter schools are and should become an integral part of the California educational system and that the establishment of charter schools should be encouraged"; that a charter petition shall be granted if the governing body "is satisfied that granting the charter is consistent with sound educational practice and with the interests of the community"; and that the school district board "shall not deny a petition for the establishment of a charter school unless it makes written factual findings, . . . setting forth specific facts to support" the statutory grounds for denial specific to the particular petition. (§ 47605, subd. (c).) These provisions give rise to what the Napa Foundation labels the presumption in favor of approval in section 47605.

17

However, the mere denial of a charter school petition based on specified, statutory grounds, without something more, does not denote unfairness. Section 47605 itself specifies grounds for denial, notwithstanding the policy favoring the establishment of charter schools. The mere denial of a petition on statutory grounds, without more, does not constitute evidence of unfairness, does not establish that the chartering authority failed to honor the presumption in favor of approval, and does not demonstrate a failure to proceed in the manner required by law.

The Napa Foundation argues that the District Board's proceeding was unfair because the board members "had already resolved to deny the" petition. However, as the trial court found, there is no evidence of improper prejudgment in the record. That the District Board members developed opinions about the petition after reviewing it in advance of the public hearing and vote is not evidence of unfairness or a failure to proceed in the manner required by law.

The Napa Foundation notes that members of the District Board "read from prepared scripts taking strong positions against the Charter Petition." At the final hearing before the District Board on the petition, after the Napa Foundation was afforded time to be heard, and after additional public comment, several members of the District Board made statements on the record, some seemingly reading from prepared statements. Again, that District Board members developed opinions about the petition after having the opportunity to review it, but before voting, is not evidence of unfairness. That, after the Napa Foundation's presentation and public comment, District Board members adhered to the opinions they may have previously formed in reviewing the petition also is not evidence of unfairness or a failure to proceed in the manner required by law.

The Napa Foundation also argues that the District Board members were "unwilling to fairly consider the evidence presented by the Napa Foundation rebutting the District Staff report, the presentation at the public hearing, and the public comments favoring approval." However, there is no evidence in the record to support this contention or to

18

establish that the District Board was unwilling to, or did not, consider evidence presented by the Napa Foundation, the presentation at the public hearing, or public comments. That District Board members may have read from prepared remarks at the final meeting at which they denied the petition is not evidence that they refused to entertain or weigh the evidence presented. At most, it is evidence that they made a determination on their opinion of the merits of the petition and, after the presentation of all evidence, adhered to their original determination. It is not evidence of any failure to proceed in the manner required by law.

The Napa Foundation next emphasizes that the staff report "discredited" the petition because the two lead petitioners were parents, not experienced school administrators. The staff report stated that the lead petitioners were parents, that they would not be operating the Mayacamas Charter School themselves on a day-to-day basis, and that they had "not identified or hired a leadership team yet." The staff report also noted that, while some of the board of directors had backgrounds in finance and/or business management, none of them appeared to have any background in "the highly-specialized area of school finance." The staff report continued, "Nor do any of the proposed directors appear to have backgrounds in curriculum, instruction, and assessment, or as the head administrator of a school, and none has school administrative experience of any kind." These are relevant observations on the qualifications of the lead petitioners and board of directors proposing to establish a charter school in the School District. In addition to being relevant as a general matter, these facts were relevant to the statutory ground for denial that the petitioners may be "demonstrably unlikely to successfully implement the program set forth in the petition." (§ 47605, subd. (c)(2).) Consideration of circumstances relevant to the presence or absence of a statutory ground for denial cannot be deemed evidence of unfairness.

The Napa Foundation emphasizes that the County Board's review of the petition was more complimentary than the District Board's, and that the District Board members

19

did not acknowledge the merits of the petition at the hearing. The Napa Foundation does not, however, adequately explain how these facts constitute evidence of unfairness or that the District Board failed to proceed in the manner required by law.

Notwithstanding the presumption in favor of granting charter petitions, contrary to the Napa Foundation's contentions, none of the arguments advanced here would support a conclusion that the District Board failed to proceed in the manner required by law. Because we conclude that there was no evidence in the record to support the State Board's conclusion that "the district abused its discretion by failing to proceed in a manner required by law because it did not provide a fair and impartial hearing process," we further conclude the State Board's determination was not supported by substantial evidence (see *Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593 [abuse of discretion in the context of administrative mandate under Code Civ. Proc., § 1094.5]), and, alternatively, that its determination was entirely lacking in evidentiary support (see *Martis Camp Community Assn.,* at pp. 593-594 [abuse of discretion in the context of ordinary mandate under Code Civ. Proc., § 1085]).

## III

### *The State Board's Review of the County Board's Decision*

The Napa Foundation argues that the record contained sufficient evidence to demonstrate to the State Board that the County Board failed to proceed in the manner required by section 47605, subdivision (c)(7). The Napa Foundation also argues that substantial evidence supported the State Board's determination that the County Board "did not provide evidence in the documentary record that the proposed charter would substantially undermine existing services, offerings, or programs."

A. *The Written Factual Findings Requirement and Timeliness*

The Napa Foundation contends that substantial evidence supported the determination that the County Board abused its discretion by violating the requirement in section 47605, subdivision (c) that it make written factual findings to support its

20

determination under subdivision (c)(7) of that section. When the County Board voted to deny the petition on March 15, 2022, it did not make any written factual findings, and, as such, it abused its discretion. For the reasons we now explain, we disagree.

As stated, section 47605 provides: "The governing board of the school district shall not deny a petition for the establishment of a charter school unless it makes written factual findings, specific to the particular petition, setting forth specific facts to support one or more" of the statutory findings set forth in section 47605, subdivision (c)(1) through (8). (§ 47605, subd. (c).) When it voted to deny the petition on March 15, 2022, the County Board did not make written factual findings. Prior to their vote, one of the members of the County Board noted that they "ha[d] to draft written findings and [¶] . . . [¶] findings have to talk about the fiscal impact of the Charter school." After the vote, the County Board designated two of its members to work with legal counsel and memorialize its findings and denial in writing, indicating that the grounds for denial that should appear in the written findings included the fiscal impact of the Mayacamas Charter School and whether its establishment would substantially undermine other programs.

The County Board was statutorily required to make written factual findings, setting forth specific facts to support its decision to deny the petition based on one or more of the statutory grounds. (§ 47605, subd. (c).) The Napa Foundation's position is, in effect, that the County Board was required to tender these written factual findings simultaneously with its vote to deny the petition or its denial was ineffective. The Napa Foundation, however, reads into the statute a requirement that it does not contain. (See *San Francisco Unified School Dist. v. San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146, 149 ["a court engaged in statutory construction cannot create exceptions, contravene plain meaning, insert what is omitted, omit what is inserted, or rewrite the statute"]; see also *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [it is a "cardinal rule of statutory construction that courts must not add

21

provisions to statutes"]; *Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 198 [appellate court will not read into statute any language that does not appear therein].)

We note the logic of not requiring written findings delivered with the decision. During a public hearing on a charter petition, the chartering authority may be persuaded by public comment, by remarks from members of the chartering authority itself, or otherwise. While the chartering authority may agree that denial is appropriate, it may require time post-hearing to draft written factual findings. Although the chartering authority could defer its denial in these circumstances, we find no requirement in section 47605 that it do so. And, of course, if the prepared written factual findings did not reflect the actual grounds for denial, they would not be adopted by that body.

Nevertheless, the statute does make clear that a valid denial of a charter petition must include "written factual findings, specific to the particular petition, setting forth specific facts to support one or more of the" statutory grounds for denial. (§ 47605, subd. (c).) Here, on April 5, 2022, the County Board adopted written factual findings to support its determination. Given the "written factual findings" requirement in section 47605, subdivision (c), we conclude the County Board's March 15, 2022, denial of the petition was not effective until the County Board adopted the written factual findings on April 5, 2022.

As an aside, we note that the Napa Foundation claims that it was prejudiced in appealing to the State Board because the County Board did not adopt written findings for 21 days after its initial denial, leaving the Napa Foundation only nine days to prepare its appeal to the State Board with the benefit of those written findings. While the Napa Foundation is correct that it had 30 days to file its appeal to the State Board (§ 47605, subd. (k)(2)(A)), here, that 30-day period would not have begun to run until the County Board's denial became effective on April 5, 2022.

We turn now to the Napa Foundation's timeliness argument. The Napa Foundation argues that, even if the procedure followed by the County Board was

22

permissible, the written findings were not timely made such that the denial occurred within 90 days after receipt of the petition on December 21, 2021, as required under section 47605, subdivision (b).

The submission to the County Board was authorized by section 47605, subdivision (k). That subdivision provides, in pertinent part: "If the governing board of a school district denies a petition, the petitioner may elect to submit the petition for the establishment of a charter school to the county board of education. . . . At the same time the petition is submitted to the county board of education, the petitioner shall also provide a copy of the petition to the school district. The county board of education shall review the petition pursuant to subdivisions (b) and (c)." (§ 47605, subd. (k)(1)(A)(i).)

Section 47605, subdivision (b), in turn, provides: "Following review of the petition and the public hearing, the governing board of the school district shall either grant or deny the charter within 90 days of receipt of the petition, provided, however, that the date may be extended by an additional 30 days if both parties agree to the extension. A petition is deemed received by the governing board of the school district for purposes of commencing the timelines described in this subdivision on the day the petitioner submits a petition to the district office, along with a signed certification that the petitioner deems the petition to be complete." (§ 47605, subd. (b).)

The Napa Foundation submitted its petition to the County Board on December 21, 2021. Based on this date, the County Board's denial, effective as of the April 5, 2022, date the County Board adopted its written factual findings, would be untimely as beyond the 90-day period. (§ 47605, subd. (b).)

The Educational Legal Alliance, however, relies on a different date for the effective submission of the petition to the County Board. Again, under section 47605, "[a]t the same time the petition is submitted to the county board of education, the petitioner shall also provide a copy of the petition to the school district." (§ 47605, subd. (k)(1)(A)(i).) According to the Educational Legal Alliance, the Napa Foundation did not

23

perfect its submission to the County Board until January 5, 2022, when it provided a copy to the School District. If this is correct, the April 5, 2022, denial, including the adoption of the written factual findings, would be timely under the 90-day timeline, if barely.

With regard to the January 5, 2022, date, there does appear in the record an email sent on that date from a co-president and member of the board of directors of the Napa Foundation to the superintendent of the School District concerning the submission to the County Board. According to the text, the email included as an attachment a complete copy of the "materials we've submitted with our petition on appeal, which we previously provided to you." This supports the Educational Legal Alliance's position.

In addressing the argument that the 90-day period did not begin to run until the submission of the petition to the School District, the Napa Foundation states that "a copy of the *petition* was transmitted to the District on December 31, 2021. [Citation.] Thus, even if December 31, 2021, is deemed to be when the timelines in section 47605[, subdivision](b) commenced, the findings ratified by the County Board on April 5, 2022, still occurred beyond the 90-day period for the charter petition to be approved or denied."

The record contains what appears to be an earlier email, dated December 31, 2021, from the same co-president and member of the board of directors of the Napa Foundation to the superintendent of the County Board. Unlike the January 5, 2022, email, the December 31, 2021, email does not display sender and recipient email addresses. Of relevance here, in the body of the email, the sender states: "We are hereby presenting the petition to the District via Superintendent Mucetti at the very same time by copy of this e-mail." There appears to be an attachment which, based on the representations in the email, was a copy of the petition downloaded from the School District's own website. Towards the top of the text, above the salutation, appears, "to bnemko, rmucetti, ljdaley"; rmucetti does appear to correspond to the identifying portion of the School District superintendent's email address.

24

We are wary of concluding that, on its submission to the County Board, the Napa Foundation successfully submitted the petition to the School District based on what appears to be an email sent to the County Board, not the School District, which may have been copied to the superintendent of the School District. However, our conclusion does not rest on this specific determination.

Once again, at "the same time the petition is submitted to the county board of education, the petitioner shall also provide a copy of the petition to the school district. The county board of education shall review the petition pursuant to subdivisions (b) and (c)." (§ 47605, subd. (k)(1)(A)(i).) Under section 47605, subdivision (b), a petition is deemed received "for purposes of commencing the timelines described in this subdivision on the day the petitioner submits a petition to the district office, along with a signed certification that the petitioner deems the petition to be complete." (*Id.*, subd. (b).) The relevant 90-day period is a component of the "timelines described in this subdivision" (*ibid.*), and necessarily applies to submissions to a county board (*id.*, subd. (k)(1)(A)(i)). Thus, the Napa Foundation's submission to the County Board would be deemed received on the day the Napa Foundation, among other things, "submit[ted] a petition to the district office, along with a signed certification that" the Napa Foundation deemed the petition to be complete. (*Id.*, subd. (b).)

The December 31, 2021, email represents that, attached to it was a copy of the petition downloaded from the School District's website. The message takes pains to state that it was downloaded "*from the District's website itself*, so there can be no question about it being the same" as the petition that was before the District Board. Even assuming the Napa Foundation submitted a copy of the petition to the School District, as well as the County Board, as required, there is no indication in the December 31, 2021, communication, or other record support, that the Napa Foundation also provided the School District with a signed certification that it "deems the petition" to the County Board "to be complete." (§ 47605, subd. (b).) Nor could we infer as much, given that

25

the sender downloaded the petition from the School District's website, which would not contain a certification that the Napa Foundation deemed the petition to the County Board to be complete.

We note that subdivision (b) of section 47605 provides the procedures and deadlines under which the governing board of a school district must address a charter school petition. Incorporating its provisions as applicable to submissions to a county board as provided for in section 47605, subdivision (k)(1)(A)(i) poses the question of whether the reference to submission of the petition and certification "to the district office" is, in the context of a submission to a county board, intended to refer to the county board rather than a district office. However, given the requirement that the appealing petitioner submit the petition to *both* the county board of education and the school district simultaneously (§ 47605, subd. (k)(1)(A)(i)), we conclude the plain language of the statute, considered as a whole, requires submission of both the petition and the certification to both entities simultaneously. (See *Harris v. University Village Thousand Oaks CCRC LLC* (2020) 49 Cal.App.5th 847, 853 [in considering statutory language, courts "examine the plain language of the statute, 'giving the words their usual, ordinary meaning' " and construe the statutory language " 'in the context of the statute as a whole and the overall statutory scheme' "].)

On this record, if the Napa Foundation perfected its submission under section 47605, it did so no earlier than January 5, 2022, as suggested by the email sent to the superintendent of the School District indicating that attached was a "complete pdf copy of the materials we've submitted with our petition on appeal . . . ." The County Board's April 5, 2022, denial, incorporating the written factual findings was therefore timely.

Accordingly, to the extent the State Board, in stating that the County Board "did not satisfy the requirements of" section 47605, subdivision (c)(7), concluded that the County Board's denial did not include written factual findings, or that the County Board did not timely deny the petition, we conclude the State Board's findings were not

26

supported by substantial evidence in light of the whole record (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593), and were "entirely lacking in evidentiary support" (*id.* at pp. 593-594).

B.      *The County Board's Factual Findings*

The Napa Foundation argues that, insofar as the State Board reviewed the County Board's subsequently ratified written factual findings, the State Board acted within its discretion in determining that there was insufficient evidence that the Mayacamas Charter School would "substantially undermine" existing district services. (§ 47605, subd. (c)(7).) Again, we disagree.

The written factual findings found that, taking into consideration the fiscal impact of the proposed school, the Mayacamas Charter School was unlikely to serve the interests of the entire community in which it was proposing to locate (§ 47605, subd. (c)(7)), that the Mayacamas Charter School "would substantially undermine existing services, academic offerings, or programmatic offerings" (*id.*, subd. (c)(7)(A)), but that it would not "duplicate a program currently offered within the school district [where] the existing program ha[d] sufficient capacity for the pupils proposed to be served within reasonable proximity to where the charter school intends to locate" (*id.*, subd. (c)(7)(B)). More specifically, the written factual findings stated: the Mayacamas Charter School would have a material negative fiscal impact on the School District; the School District had declining enrollment that was projected to reduce its student population by 17.05 percent over a ten-year period and that this would necessitate significant School District staff layoffs over the coming years; the reduction in students caused by enrollment at the Mayacamas Charter School would result in an increased reduction in student population to almost 19 percent over a ten-year period; the School District's declining enrollment had been significantly impacting revenue since at least 2014; the School District had been deficit spending since 2014; the School District's reserves were critically low; the Napa County Office of Education had directed the School District to end deficit spending

27

including by reducing staff and closing smaller schools with low enrollment; the School District agreed to cut expenses and increase revenues in the areas of food services, transportation, small schools, facilities use fees, charter schools, extended days, class size, and district office staffing; without making additional cuts, the School District would not hold its required reserve in the 2026-2027 school year, and, with the addition of the Mayacamas Charter School and without additional cuts, the School District would not hold its required reserve in the 2025-2026 school year; the circumstances would have been even more dire but for the influx of one-time COVID-19 pandemic funding and related reduced operational costs; the School District must make significant staffing and programming cuts over the coming years to stay financially solvent; the School District likely will have to close more schools, and the loss of students to the Mayacamas Charter School would exacerbate these circumstances; as a result of funding losses associated with the enrollment of students at the Mayacamas Charter School, the School District projected it would have to reduce its number of teachers by 34 over the first five years of the operation of the Mayacamas Charter School; the School District anticipated having to cut staffing, close additional schools, reduce programs and services, and reduce contract expenditures to mitigate the loss of funding that would result from the loss of students to the Mayacamas Charter School; the School District could have to eliminate its middle school sports program and elementary school music and physical education programs, counselors, intervention teachers, and electives and/or close small elementary schools in the City of Napa; and if the Mayacamas Charter School was approved, the School District anticipated having to renegotiate and/or terminate contracts with the Napa County Office of Education for after school programs, summer school programs, and career technical education or career technical education/CTE programs.

These factual findings were supported by the staff findings prepared for the County Board. They also were supported by the School District's 2021-2022 Second Interim Financial Report Period Narrative. In addition to the foregoing, the School

District's 2021-2022 Second Interim Financial Report Period Narrative stated that approval of the petition would undermine existing services and programs due to its fiscal impact, and that, based on the Napa Foundation's enrollment projections, the School District would "lose over $1.6 million . . . in the first year and $13 million . . . over 5 years. In response, the [School] District will need to close additional schools, reduce programs and services for students, lay off additional employees, and reduce expenditures on contracts." Additionally, a "Summary What If Analysis" from the Napa County Office of Education indicated that, for the 2026-2027 fiscal year, the School District's financial balance would be more than $9,000,000 lower, and in the negative, with the Mayacamas Charter School as opposed to without it.

The factual findings demonstrate that the Mayacamas Charter School was demonstrably unlikely to serve the interests of the entire community based on its fiscal impact because it "would substantially undermine existing services, academic offerings, or programmatic offerings." (§ 47605, subd. (c)(7)(A).) Of course, the Mayacamas Charter School would not be solely responsible for the negative fiscal circumstances. However, the County Board's factual findings plainly demonstrate a substantial negative fiscal impact on the community that would be attributable to the Mayacamas Charter School itself. Such impacts include an increased reduction in student population, diminished revenue, accelerated loss of reserves, an increase in the likelihood of having to close schools, a reduction in retained teachers and other staff, and a reduction in programs and services. Contrary to the Napa Foundation's contentions, we do not conclude that the record establishes that, if the petition were approved, it would have merely "some measurable fiscal impact on the District," or " 'an' impact" as distinguished from an impact that "would substantially undermine existing services, academic offerings, or programmatic offerings." (§ 47605, subd. (c)(7)(A).)

In the context of this factual record, the determination of the State Board, in reviewing the County Board's decision for abuse of discretion (§ 47605, subd. (k)(2)(E)),

29

that the County Board "did not provide evidence in the documentary record that the proposed charter would substantially undermine existing services, offerings, or programs" was not supported by substantial evidence in light of the whole record (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593), and was arbitrary, capricious, and entirely lacking in evidentiary support (*id*. at pp. 593-594).

The Napa Foundation argues that the County Board's findings "did not account for analysis in the record indicating that any projected loss of District enrollment would be entirely negated by the District's expansion of transitional kindergarten and the influx of young students into the district's schools." Findings prepared by the Napa County Office of Education noted that the School District's demographer "estimates that [the School District] will add approximately 460 units of Average Daily Attendance by the 2025-2026 school year when Transitional Kindergarten is fully expanded." However, in the 2021-2022 Second Interim Financial Report Period Narrative, the School District noted that enrollment had declined by 1,429 students from the 2016-2017 school year to the 2021-2022 school year, and that "[e]ven after adjusting for increased Transitional Kindergarten enrollment, approval of a charter by [the Napa County Office of Education] will accelerate declining enrollment." At most, the record was conflicting on this one discrete point, and, either way, in the context of the entire record, it is certainly not sufficient itself to establish that the State Board's determination—that the County Board did not provide evidence that the Mayacamas Charter School would substantially undermine existing services, offerings, or programs—was supported by substantial evidence or was not arbitrary, capricious, and entirely lacking in evidentiary support.

The Napa Foundation argues that the trial court applied an incorrect standard of review, focusing on whether the evidence supported the County Board's decision rather than focusing on whether the State Board's decision was arbitrary, capricious, or entirely lacking in evidentiary support. The Napa Foundation contends that the court substituted its own judgment for that of the State Board. However, we are concerned with the State

30

Board's decision, not the trial court's. "On appeal in mandate actions, the trial court and appellate court perform the same function. [Citations.] We review the agency's action, not the trial court's decision." (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593.)

The State Board's determination was not supported by substantial evidence in light of the whole record (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593), and, alternatively, was arbitrary, capricious, and entirely lacking in evidentiary support (*id*. at pp. 593-594). The State Board failed to properly apply the abuse of discretion standard of review as it was statutorily required to do. (§ 47605, subd. (k)(2)(E).)

IV

*Section 47605, Subdivision (k)(2)(E)*

The Napa Foundation argues that the trial court improperly analyzed whether the State Board found that abuses of discretion were committed by *both* the District Board *and* the County Board. According to the Napa Foundation, the version of section 47605, former subdivision (k)(2)(E) in effect at the time only required the State Board to find an abuse of discretion committed by *either* the District Board *or* the County Board to support its determination.

We have concluded that the State Board's determination reviewing both the District Board's and the County Board's decisions was not supported by substantial evidence in light of the whole record, (*Martis Camp Community Assn., supra*, 53 Cal.App.5th at p. 593), and, alternatively, that it was arbitrary, capricious, and entirely lacking in evidentiary support (*id*. at pp. 593-594). Because the State Board did not properly reverse either the District Board *or* the County Board, the question of whether a prior iteration of section 47605 required the State Board to find both the District Board and the County Board's decisions to be an abuse of discretion in order to reverse, or if it only required such a finding as to one or the other, is immaterial. We need not resolve this issue of statutory construction of a now-superseded provision of section 47605.

31

DISPOSITION

The judgments are affirmed.  The Napa Valley Unified School District and the California School Boards Associations Educational Legal Alliance shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                  \s\ ,
                                  Krause, J.

We concur:

\s\ ,
Hull, Acting P. J.

\s\ ,
Mesiwala, J.

32

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NAPA VALLEY UNIFIED SCHOOL DISTRICT,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>STATE BOARD OF EDUCATION,<br><br>　　　　Defendant and Respondent;<br><br>NAPA FOUNDATION FOR OPTIONS IN EDUCATION,<br><br>　　　　Real Party in Interest and Appellant;<br><br>NAPA COUNTY OFFICE OF EDUCATION,<br><br>　　　　Real Party in Interest. | C099068<br><br>(Super. Ct. No. 34-2022-80004051-CU-WM-GDS)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

1

| | |
|---|---|
| CALIFORNIA SCHOOL BOARDS ASSOCIATIONS EDUCATIONAL LEGAL ALLIANCE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STATE BOARD OF EDUCATION,<br><br>Defendant and Respondent;<br><br>NAPA FOUNDATION FOR OPTIONS IN EDUCATION,<br><br>Real Party in Interest and Appellant. | C099069<br><br>(Super. Ct. No. 34-2023-80004069-CU-WM-GDS)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on March 14, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

2

EDITORIAL LISTING


APPEALS from a judgment granting a petition for writ of mandate of the Superior Court of Sacramento County, Shelleyanne Wai Ling Chang, Judge.  Affirmed.

Garcia Hernández Sawhney, Bonifacio Bonny Garcia, Mary T. Hernández, Alex C. Sears, and Conor H. Kennedy for Plaintiff and Respondent Napa Valley Unified School District in No. C099068.

Dannis Woliver Kelley, Sue Ann Salmon Evans, and Keith A. Yeomans for Plaintiff and Respondent California School Boards Associations Education Legal Alliance in No. C099069.

Young, Miney & Corr, John C. Lemmo, Lee J. Rosenberg, and Paul S. Theis for Real Party in Interest and Appellant Napa Foundation for Options in Education.

Weintraub Tobin Chediak Coleman Grodin, James Kachmar; Julie Ashby Umansky for California Charter Schools Association as Amicus Curiae on behalf of Real Party in Interest and Appellant Napa Foundation for Options in Education.

No appearance for Defendant and Respondent.

BY THE COURT:

_____\s_____
Hull, Acting P. J.


_____\s_____
Krause, J.


_____\s_____
Mesiwala, J.